## IN THE UNITED STATES DISTRICT COURT FOR
## WESTERN DISTRICT OF TENENSSEE, WESTERN DIVISION

TODD LACKIE, and wife,
ALICIA LACKIE

      Plaintiffs,

                                    No. 2:11-cv-02181

v.

E.I. DUPONT de NEMOURS and
COMPANY, and MID-SOUTH RAIL
& CONSTRUCTION, LLC

      Defendant.

## DEFENDANT MID-SOUTH RAIL & CONSTRUCTION, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, Mid-South Rail & Construction, LLC ("MSR" or "Defendant"), by and through counsel of record, pursuant to Rule 56 of the Federal Rules of Civil Procedure hereby files this Memorandum in Support of Its Motion for Summary Judgment and States the following:

### INTRODUCTION

Defendant MSR filed its Motion for Dismissal of Plaintiffs' Amended Complaint on October 24, 2011. (D.E. 64). Plaintiffs filed their response in opposition on November 21, 2011. (D.E. 66). MSR filed its reply on December 6, 2011. (D.E. 69). The Court entered its Order Denying Mid-South Rail & Construction, LLC's Motion for Dismissal of Plaintiffs' Amended Complaint on January 23, 2012 (D.E. 77).

According to the Court's Order Denying Defendant Mid-South Rail & Construction, LLC's Motion for Dismissal of Plaintiffs' Amended Complaint, (D.E. 77), the Court stated that

Plaintiffs Todd and Alicia Lackie had alleged that a faulty railroad switch caused Mr. Lackie to suffer a spinal injury. (Am. Compl. (D.E. 22) ¶ 3). Plaintiffs allege that Defendants E.I. DuPont de Nemours and Company ("DuPont") and MSR "negligently selected, installed, maintained, and repaired" the railroad switch that caused Plaintiff Todd Lackie's injury.[1] (Id. ¶ 5). Plaintiffs Amended Complaint further alleges that MSR "selected, installed, owned, controlled, and maintained the machine tools [switch stands] involved in this accident." (Id. ¶ 4) (alteration in original)). The Amended Complaint further alleges that these switch stands "were hazardous because of the probability that they would or could cause spinal injuries to workers under normal use or during any foreseeable misuse." (Id.). Further, MSR "knew or should have known, that a hazardous condition involving these machine tools [switch stands] could arise due to the failure of the machine tools [switch stands] to operate safely or properly or to tail to do so due to the design defect, state of repair or any reasonably foreseeable misuse." (Id. (alterations in the original)). In the Order the Court stated

> Mid-South's selection, installation, ownership, control, and maintenance of the switch stand in question would obligate Mid-South to ensure that the operation of the switch stands did not create an unreasonable risk of harm. (D.E. 77 p. 6).

The undisputed evidence shows that MSR did not select, install, own, or control the allegedly dangerous switch stand. The undisputed evidence further shows that MSR did not owe a duty to recommend the replacement of the switch stands at the DuPont facility in Millington, TN (the "facility"). Further, Plaintiffs have presented no evidence that establishes that MSR negligently maintained or repaired the switch stand that allegedly caused Plaintiff Todd Lackie's

---

[1] Plaintiffs' Amended Complaint alleged Mid-South Rail Repair & Reconditioning, Atlantic Track & Turnout Co., and Railserve Inc. may have also "selected, installed, owned, controlled, and maintained" the rail switch at issue. (Am. Compl. ¶ 4.). Claims against Mid-South Rail Repair & Reconditioning and Atlantic Turnout were dismissed without prejudice. (D.E. 40). The claims against Railserve were dismissed with prejudice. (D.E. 36).

injury, nor have Plaintiffs established that MSR knew or should have known of the alleged defective condition of the switch stand. Additionally, Plaintiffs have failed to prove that any action on the part of MSR caused Plaintiff Todd Lackie injury. Finally, in the alternative, Plaintiff Todd Lackie was at least fifty percent (50%) at fault for the accident and his subsequent injuries, if any. Accordingly, Plaintiffs negligence claim against MSR fails, MSR is entitled to judgment as a matter of law, and respectfully, Plaintiffs' claim against MSR should be dismissed with prejudice.

## FACTS

The Concise Statement of Undisputed Facts filed contemporaneously herewith is hereby referenced and the contents of the same are adopted by reference as if such facts were set forth herein in their entirety.  Fed. R. Civ. P. 10(c). [2]

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Ruling on a motion for summary judgment requires a "threshold inquiry" of whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). As made clear by the Supreme Court, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 248. "A dispute is 'genuine' only if based on evidence upon which a reasonable

---

[2] Defendant stipulates that the following facts are true for purposes of this Motion for Summary Judgment only. Defendant reserves the right to contest any of the facts contained in this filing for all purposes other than this Motion for Summary Judgment.

jury could return a verdict in favor of the non-moving party," and a fact is material "only if its resolution might affect the outcome of the suit under the governing substantive law." <u>Niemi v. NHK Spring Co., Ltd.</u>, 543 F.3d 294, 298-99 (6th Cir. 2008) (citing <u>Hedrick v. W. Reserve Care Sys.</u>, 355 F.3d 444, 451 (6th Cir. 2004); <u>see also</u> <u>Shropshire v. Laidlaw Transit, Inc.</u>, 550 F.3d 570, 576 (6th Cir. 2008) (the court must determine that "a genuine issue of material fact on the essential elements of [one]'s case" exists). In reaching its ruling, the trial court need not "search the entire record to establish that it is bereft of a genuine issue of material fact"; rather, the Court may rely on the evidence that the parties bring to its attention. <u>Tucker v. Tennessee</u>, 539 F.3d 526, 531 (6th Cir. 2008); <u>see also</u> <u>Frito-Lay, Inc. v. Willoughby</u>, 863 F.2d 1029, 1034 (D.C. Cir. 1988).

A court ruling on a motion for summary judgment must draw "all reasonable inferences in favor of the non-moving party." <u>Johnson v. Karnes</u>, 398 F.3d 868, 873 (6th Cir. 2005). The initial burden belongs to the moving party to show "the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." <u>Hedrick</u>, 355 F.3d at 451. The moving party need not present evidence affirmatively negating the elements of the non-moving party's allegations, but may demonstrate that it is entitled to summary judgment by showing that there is an "absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to "set forth specific facts showing a triable issue." <u>Wrench LLC v. Taco Bell Corp.</u>, 256 F.3d 446, 453 (6th Cir. 2001) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)). The non-moving party cannot rest on its pleadings alone; there must be "sufficient evidence . . . for a reasonable jury to return a verdict for that party." <u>Anderson</u>, 477 U.S. at 249. A "mere existence of a scintilla of evidence in

4

support of the [non-moving party's] position will be insufficient," Id. and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec., 475 U.S. at 586. However, if the non-moving party's proffered evidence is "merely colorable" or "not significantly probative" then summary judgment is appropriate. Id. at 250.

## LAW & ARGUMENT

On January 23, 2012, this Court entered an Order Denying MSR's Motion to Dismiss wherein the Court laid out the elements of each one of Plaintiffs' claims and the pled facts that would support such claims, if true. (D.E. 77). After testimony and entry of documents, the record is devoid of facts to support Plaintiffs' claims as alleged in their Amended Complaint and Response to Motion to Dismiss. Additionally, the facts that this Court found in denying MSR's Motion to Dismiss have not been proven. The proof is undisputed that MSR did not own, select, or control the switch stands at the facility. Further, Plaintiffs have failed to prove that MSR negligently installed the switch stands. Additionally, Plaintiffs have failed to prove that MSR negligently maintained or repaired any switch stands. Plaintiffs have also failed to prove that Plaintiff Todd Lackie's alleged injury was caused by any negligence on the part of MSR. Nor, have Plaintiffs established that MSR knew or should have known of the alleged condition. Finally, as a matter of law, it is clear that Plaintiff Todd Lackie was at least 50% at fault for the accident and his subsequent injury, if any. As such, MSR is entitled to summary judgment as a matter of law and Plaintiffs' claims against it should be dismissed with prejudice.

I.    **PLAINTIFF HAS FAILED TO DEMONSTRATE THAT MSR SELECTED, CONTROLLED, OR OWNED THE DUPONT SWITCH STANDS, OR THAT IT NEGLIGENTLY MAINTAINED, OR REPAIRED SAID STANDS.**

Plaintiffs' sole cause of action sounds in negligence. Under Tennessee law, a claim of negligence requires proof of the following elements: (1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, causation. Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000). In other words, a plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the defendant's power more probably than not would have prevented the injury. Doe v. Linder Const. Co., Inc., 845 S.W.2d 173, 178 (Tenn. 1992) (citing Tedder v. Raskin, 728 S.W.2d 343, 348-49 (Tenn. Ct. App. 1987)).

A.  **MSR did not select, own, or control the switch stand(s) at the DuPont facility.**

In its Order, the Court found that because Plaintiffs had alleged that MSR selected, owned, and controlled the switch stand(s), that it was obligated to ensure that the operation of the switch stands did not create unreasonable harm. It is undisputed, however, that MSR did not select, own, or control the switch stand(s) at the facility as those stands were selected, owned, and controlled by DuPont. The undisputed facts are that DuPont owns the railroad tracks and switch stands at the facility. (D.E. 22 ¶ 3). DuPont purchased and controlled the switch stands at the facility. (CSMF ¶¶ 2, 3). The decision on whether to repair or replace something at the facility is made by DuPont. (Id.). DuPont is responsible for the maintenance of all the tracks at the facility including repairing the tracks and the switch stands. (CSMF ¶ 4). Also, DuPont ordered and furnished all materials, including switch stands. (CSMF ¶ 41). Further, MSR became an "as-needed" non-resident contractor at the DuPont facility in March of 2009. (CSMF ¶ 8). As

a non-resident contractor, MSR did not have access to the facility unless DuPont requested service, and once at the facility, MSR was only allowed access to areas, switch stands included, that were subject to a TER completed by Railserve. (CSMF ¶¶ 8, 20, & 21). Additionally, once MSR became a non-resident "as-needed" contractor, the inspection, oiling, and lubrication of the switch stands at the facility was performed by Railserve. (CSMF ¶¶ 10, 11). Any involvement by MSR with a switch stand would require Railserve first requesting a repair from DuPont with a TER, then DuPont making the decision to allow MSR on to the facility to perform said repair. (CSMF ¶¶ 8, 16, 20, 21, 22, 23, & 26). As Plaintiffs have failed to establish that MSR selected, owned, or controlled the switch stands at the DuPont facility, Plaintiffs have failed to establish an element of their *prima facie* case regarding negligent, selection, ownership, or control, and their claims on these issues should be dismissed.

**B.  Plaintiffs have failed to establish that MSR installed the Switch Stand(s) at the DuPont facility.**

Here, Plaintiffs have offered no evidence that MSR installed the switch stand(s) that allegedly injured Plaintiff Todd Lackie. Accordingly, Plaintiffs have failed to establish an element of their *prima facie* case regarding negligent installation, and their claims on this issue should be dismissed.

**C.  Plaintiffs have failed to establish that MSR negligently maintained or repaired any switch stands at the DuPont facility.**

As stated above, MSR was an "as needed" contractor who only made repairs after receiving TERs from DuPont that were submitted by Railserve who was at the facility daily, and who also had the contractual responsibility of inspecting, oiling, lubricating and adjusting the switch stands. (CSMF ¶ 55). The record shows that TERs completed by Railserve were given to DuPont, and DuPont would then determine if the TER would be given to MSR to perform work

at the facility. (CSMF ¶¶ 16, 20, & 50). Duty, in terms of negligence, is a person or entity's legal obligation owed to the plaintiff to conform to a reasonable standard of care, which under foreseeable circumstances will prevent harm to others. Staples, 15 S.W.3d at 89. Establishment of a legal duty owed by the defendant is an absolute prerequisite to any recovery under a theory of negligence. See, e.g. Plunk v. National Health Inv'rs, Inc., 92 S.W.3d 409, 413 (Tenn. Ct. App. 2002). As the Supreme Court of Tennessee said nearly a century ago, the right to recover for injuries resulting from negligence is based upon violation of a duty, and where there is no duty there can be no negligence. Chattanooga  Warehouse & Cold Storage Co. v. Anderson, 141 210 S.W. 153, 155 (Tenn. 1919). Determining the existence and extent of one's legal duty to prevent harm to others is a question of law for the courts. Staples, 15. S.W. 3d at 89. In deciding the issue of duty, courts look at whether a particular defendant was under any obligation imposed by law for the benefit of a particular plaintiff. Dooley v. Everett, 805 S.W.2d 380, 384 (Tenn. Ct. App. 1990).

If this Court finds that MSR owed Plaintiff a duty, that would be a duty of ordinary care in performing maintenance or making repairs. Although unable to find case law directly on point to the issue of railroad maintenance in a tort context, Tennessee has addressed a similar situation in an elevator scenario. In Willoughby v. Montgomery Elevator Co., 87 S.W. 3d 509, 511 (Tenn. Ct. App. 2002), where an employee was injured in the elevator in his building, the Court concluded that when an elevator maintenance company is neither the owner of the elevator nor has exclusive 'garde' of the elevator, it must only exercise reasonable care in the performance of its services. The Court of Appeals held that the crucial issue is "who has control." Id. In Wiloughby, the Court observed that both the owner of the elevator and the maintenance company exercised control over the elevator. The Court found that the maintenance company

was not the owner and operator and that the maintenance company was given "technical direction" from the owner. In the words of the Court, "Quite simply, the owner of the elevator maintained a significant amount of control over the elevator." Id.

The facts of this case are strikingly similar to those in Wiloughby. As stated above, DuPont owns the railroad tracks and the switch stands on those tracks, including the stand that allegedly injured Plaintiff Todd Lackie. The evidence demonstrates that DuPont has maintained significant control over the switch stands, in that DuPont determined: what switch stands would be worked on, who would perform the work, when the work would be performed, the manner in which the work would be performed, and supplied the materials used. (CSMF ¶¶ 1, 2, 3, 8, 10, 11, 41, & 55). At the time of the alleged incident, MSR was not allowed at the facility unless allowed by DuPont. (CSMF ¶ 8). At the time of this incident, any maintenance work performed by MSR was at DuPont's express request, sole discretion, and pursuant to a TER. (Id.). Additionally, the record reflects that the routine maintenance of the switch stands at the facility such as inspecting, oiling, lubricating, and adjusting was the responsibility of Railserve per its contract with DuPont. (CSMF ¶ 55). Plaintiffs' have not established that MSR negligently maintained the switch stands at the DuPont facility, or that any alleged negligent maintenance by MSR caused Plaintiff Todd Lackie's injury.

Further, Plaintiffs have not established that MSR negligently repaired any of the equipment at the facility. To the contrary, Mr. James Banks testified during his deposition that he received a track exception report for the No. 8 switch and repaired it. (CSMF ¶ 30). No testimony, expert or otherwise, has been taken that establishes that the repair performed by Mr. James Banks was not done properly. Therefore, summary judgment on this issue is appropriate

as MSR only had a duty of ordinary care, and no evidence has been presented to establish that MSR did not exercise ordinary care in performing maintenance or repair work at the facility.

## II.   PLAINTIFFS HAVE FAILED TO ESTABLISH THAT MSR HAD A DUTY TO RECOMMEND NEW PRODUCTS TO DUPONT

As stated above, Plaintiffs must first prove that MSR had a duty to recommend new products to DuPont. MSR has searched for a legal basis of Plaintiffs' theory that MSR failed to recommend and has been unable to find any such case law that imposes such a duty. A duty to recommend can arise through some type of contractual relationship. In this case, MSR's relationship to DuPont was as an "as needed" contractor. MSR was only allowed to perform maintenance work at the DuPont facility when it was so instructed by DuPont.

Additionally, it is Mr. Roy L. Dean, P.E.'s opinion that

Mid-South should not have recommended or suggested that the ball type switch handles be replaced at the DuPont facility in Memphis. The decision to change the design specifications of any track component is made by the owner of the track. Mid-South was working under contract to maintain the tracks in the DuPont facility. There was no more reason for them to make a recommendation to change the handles on the switch stands than there was for them to recommend that DuPont install continuous welded rail or change the physical layout of the facility to reduce the degree of curves. (Ex. "1" to Aff. of R. Dean, p. 10)

Plaintiffs have offered no evidence to rebut Mr. Dean's opinion that MSR was not required to recommend or suggest that the handles on the switch stands at the facility be replaced. Plaintiffs have not established that MSR owed a duty or should have recommended to DuPont that it change out the handles on the switch stands at the facility. In fact, Plaintiffs' expert, Mr. Toby Hayes, stated in his report that

DuPont was aware of the risks associated with manual switches, including ground throw switches, and as 2002 should have both stopped installing ground throw switches and replaced all previously installed ground throw switches.

(CSMF ¶46). As Plaintiffs have failed to establish that MSR had a duty to recommend that the switch handles be replaced at the facility summary judgment on this issue is appropriate as a matte or law.

## III.   PLAINTIFFS HAVE FAILED TO PROVE THAT MSR'S NEGLIGENCE CAUSED PLAINTIFF TODD LACKIE'S ALLEGED INJURY.

The Plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was the cause in fact of the result. A mere possibility of such causation is not enough. Miller v. Choo Choo Partners, L.P., 73 S.W.3d 901 (Tenn. Ct. App. 2001). Plaintiffs' Amended Complaint alleges that Plaintiff Todd Lackie's use of a 180 degree "ground throw" switch handle caused a severe spinal injury. While biomechanical engineers have been retained by both parties to testify as to whether the device is capable of causing the acute injury alleged, Plaintiffs have failed as a matter of law to demonstrate through medical evidence that Plaintiff Todd Lackie's alleged injury was caused by the alleged instrumentality at the facility at all.

"As a general rule, the causation of a medical condition must be established by testimony from a medical expert." Id. at 901. Such testimony is not sufficient to establish causation if it is speculative in nature. Primm v. Wickes Lumber Co., 845 S.W.2d 768, 771 (Tenn. Ct. App. 1992). "Proof of causation equating to a 'possibility,' a 'might have,' 'may have,' 'could have' is not sufficient, as a matter of law, to establish the required nexus between the plaintiff's injury and the defendant's tortious conduct by a preponderance of the evidence...." Ambrose v. Batsuk, No. M2006-01131-COA-R3-CV, 2008 WL 1901207, at *5 (Tenn. Ct. App. Apr. 30, 2008) (attached hereto) (quoting Kilpatrick v. Bryant, 868 S.W.2d 594, 602 (Tenn. 1993)). Plaintiff Todd Lackie was treated by Dr. Francis Camillo, an orthopedic spine specialist at the Campbell Clinic. Dr. Camillo testified the condition for which a surgery was necessitated was not an acute

injury but rather a bilateral PARS fracture that was a chronic condition. Dr. Camillo testified only that the pre-existing pars fracture "may" have been aggravated or irritated, which the Court has held is not enough. (CSMF ¶¶ 65, 76, & 79). This testimony does not satisfy a necessary element of proof, legal causation, which is required to establish a *prima facie* case of negligence, and therefore summary judgment is appropriate as a matter of law.

Plaintiffs have adduced no proof that Plaintiff Todd Lackie's alleged injury and/or surgery were more likely than not caused by throwing a 180 degree "ground throw" switch handle. Further, there is no testimony that the surgery performed by Dr. Camillo was necessitated by the alleged negligence of MSR. According to Dr. Camillo, the surgery was performed to alleviate impingement on a nerve root caused by spondylolisthesis. Dr. Camillo opined the spondylolisthesis was more than likely caused by the pre-existing pars fracture and that this was not an acute injury. (CSMF ¶¶ 81, 83). Plaintiffs have adduced no proof that the pars fracture was in any way caused by Plaintiff Todd Lackie's work and specifically by the alleged negligence of MSR.

## IV.   PLAINTIFFS HAVE FAILED TO PROVE CHARGES FOR MEDICAL SERVICES WERE REASONABLE

As discussed above, Dr. Camillo was unable to testify that the injury and surgery he performed were more likely than not related to Plaintiff Todd Lackie's work. Similarly when asked to opine as to the reasonableness of certain charges of other medical providers as well as the charges of Methodist Hospital where the spinal fusion was performed, Dr. Camillo testified he was only familiar with the charges of his office and that he could not speculate or "estimate" what would be a reasonable charge by any other medical professional or medical facility. (CSMF ¶¶ 66, 67). Therefore Plaintiffs have failed to prove as a matter of law the charges he incurred for medical services were related to his work injury or that they were in fact reasonable charges as

compared to those of similar professionals or facilities in this community. <u>Borner v. Autry</u>, 284 S.W.3d 216, 218 (Tenn. 2009). Specifically Dr. Camillo testified that he was unfamiliar with charges of anesthesiologists, emergency department physicians, or facilities like Crittenden Regional Hospital or Methodist Hospital.  (CSMF ¶68).

## V.     PLAINTIFFS HAVE FAILED TO ESTABLISH THAT MSR IS LIABLE UNDER A THEORY OF PREMISES LIABILITY.

Plaintiffs' Amended Complaint is unclear as to theories of law to which they assert their claims. Therefore, to the extent that Plaintiffs assert a claim under the theory of premise liability, MSR argues that Plaintiffs have not presented facts to support such a claim. In addition to the elements of negligence, in premises liability cases, an owner of premises will not be held liable for allowing a dangerous or defective condition to exist unless the Plaintiff also proves that:

> (1) the condition was caused or created by the owner, operator or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident.

<u>Blair v. W. Town Mall</u>, 130 S.W.3d 761, 764 (Tenn. 2004).

Where a company contracted to maintain the premises of a hotel, the Court of Appeals found that a contractual right to repair is not synonymous with a legal duty and that a right to enter and maintain an area does not place a duty upon the maintenance company to protect guests on the property. Instead, the Court found that the owner retained the duty to protect customers as the owner of the premises. Plana v. Old Town of Jackson, 316 S.W.3d 622, 630 (Tenn. Ct. App. 2009). For this reason, any claim against MSR under the theory of premise liability should be dismissed as it is undisputed that MSR did not own or operate the DuPont facility where Lackie worked.

In the alternative, even if this Court determines that MSR owed Plaintiff Todd Lackie a duty under a premises liability theory, Plaintiffs have not established that the condition that allegedly injured Plaintiff Todd Lackie was caused or created by MSR. As such, the only manner in which MSR could then be liable, should a duty exist, would be for Plaintiffs to establish that MSR had actual or constructive notice that the condition existed prior to the alleged incident. Plaintiffs have failed to establish that MSR had actual knowledge of the condition prior to Plaintiff Todd Lackie's alleged incident. Plaintiffs have also failed to demonstrate that MSR had constructive notice that the alleged condition existed prior to the incident in that they have failed to demonstrate that MSR had notice of pattern of conduct, recurring incident, general or continuing condition, Blair v. West Town Mall, 130 S.W.3d 761, 764 (Tenn. 2004) or that the alleged condition existed for such a length of time that MSR should have discovered the condition. Simmons v. Sears, Roebuck & Co., 713 S.W. 2d 640, 641-42 (Tenn. 1986). Again, at the time of the incident, DuPont was the owner of the subject switch stands and track, MSR was only working at the DuPont facility as-needed, and Railserve was using the switch stands daily, inspecting, oiling, and lubricating the switch stands once per month. (CSMF ¶¶ 1, 8, & 55). There is no proof that MSR had knowledge of any alleged defective or dangerous conditions regarding the switch stand(s).

**VI.     BECAUSE PLAINTIFF TODD LACKIE IS AT LEAST FIFTY PERCENT (50%) AT FAULT FOR THE ACCIDENT AND HIS SUBSEQUENT INJURIES, IF ANY, SUMMARY JUDGMENT IS APPROPRIATE AS A MATTER OF LAW.**

In the alternative, even if the court finds that MSR was negligent, summary judgment is still appropriate based upon Plaintiff Todd Lackie's comparative fault being at least fifty percent (50%) for the accident and alleged injuries.

In <u>McIntyre v. Ballentine</u>, 833 S.W.2d 52, 57 (Tenn. 1992) the Supreme Court of Tennessee adopted the doctrine of comparative fault. In <u>McIntyre</u> the Court held, "so long as a plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover; in such a case, plaintiff's damages are to be reduced in proportion to the percentage of the total negligence attributable to the plaintiff." <u>Id.</u> Though, summary judgment is generally not an appropriate manner by which to determine comparative fault, <u>Elrod v. Cont'l Apartments</u>, No. M2007-01117-COA-R3-CV, 2008 WL 425947, *2 (Tenn. Ct. App. Feb. 13, 2008) (attached hereto) "if the evidence is evaluated in the light most favorable to the plaintiff and reasonable minds could not differ that her fault was equal to or great(er) than that of the defendant, summary judgment in the defendant's favor may be granted." <u>Id.</u>; <u>Staples</u>, 15 S.W.3d at 91-92.

The undisputed fact is that Plaintiff Todd Lackie was not going to step away from a switch handle at the DuPont facility that he believed was hard to throw because he wanted to keep his job with Railserve. (CSMF ¶ 38). As such, reasonable minds cannot differ that Plaintiff Todd Lackie is at least 50% at fault for any alleged injury he may have sustained from operating a switch stand that was hard to throw. As such, summary judgment is appropriate as a matter of law and Plaintiffs' claims should be dismissed.

<u>**CONCLUSION**</u>

Based on the foregoing, Defendant Mid-South Rail & Construction, LLC respectfully requests that this Court grant summary judgment in its favor since there is no genuine issue of material fact and Defendant Mid-South Rail & Construction, LLC is entitled to a judgment in its favor as a matter of law.

Respectfully submitted,

**LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC.**

BY: /S/MOLLY GLOVER
MOLLY GLOVER, No. 016113
STEVE N. SNYDER, No. 025703
Brinkley Plaza, Suite 800
80 Monroe Avenue
Memphis, Tennessee 38103
Phone: (901) 527-0214
Fax: (901) 527-8224
molly.glover@leitnerfirm.com
steven.snyder@leitnerfirm.com
*Counsel for Mid-South Rail & Construction, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of April 2012, a copy of the foregoing electronically filed instrument was served on the parties listed below by first-class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party, and/or via email:

PHILIP E. MISCHKE, No. 010063
AHSAKI E. BAPTIST, No. 025884
Wyatt, Tarrant & Combs, LLP
1714 Aaron Brenner Dr., Suite 800
Memphis, TN 38120-4367
(901) 537-1052
pmischke@wyattfirm.com
abaptist@wyattfirm.com
*Attorneys for E.I. DuPont de Nemours and Company*

MARK LEDBETTER, No. 017637
Halliburton & Ledbetter
254 Court-Suite 305
Memphis, TN 38103
(901) 523-8153
Mark794@aol.com
*Attorney for Plaintiffs*

By:      /s/MOLLY GLOVER
         MOLLY GLOVER